# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,

v.                                                              Case No. 24-CR-15-JPS

DAMEON A. HOLCOMB,

                    Defendant.                                  **ORDER**

---

## 1.    INTRODUCTION & BACKGROUND

In February 2024, the grand jury returned a Superseding Indictment charging Defendant Dameon A. Holcomb ("Defendant") with three counts of knowingly making false and fictitious written statements in connection with the purchase of firearms in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) and one count of possession of a firearm by an illegal drug user in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8). ECF No. 2.

The Superseding Indictment is premised on the following asserted facts. ECF No. 18 at 2. In January, May, and June 2023, Defendant purchased firearms from a federally licensed firearms dealer in Wisconsin. *Id.* On the ATF Form 4473 (the "ATF Form") for each of the purchases, he answered "no" to the question that asked if he was an unlawful user of marijuana when he was, in fact, an unlawful user of marijuana. *Id.* Additionally, the Government alleges that in July 2023 Defendant knowingly possessed a firearm knowing that he was an unlawful user of marijuana.

Defendant now moves to dismiss the Superseding Indictment. ECF No. 16. Magistrate Judge Nancy Joseph recommends that the Court deny

Defendant's motion to dismiss. ECF No. 21. Defendant objected to Magistrate Judge Joseph's report and recommendation, ECF No. 23, and the Government responded, ECF No. 24.[1] For the reasons discussed herein, the Court will overrule Defendant's objections, adopt Magistrate Judge Joseph's report and recommendation in full, and deny Defendant's motion to dismiss.

## 2.      STANDARD OF REVIEW

When reviewing a magistrate's recommendation, this Court is obliged to analyze de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*. The Court's review encompasses both the magistrate's legal analysis and factual findings. *Id*.; *see also* Fed. R. Crim. P. 59(b).

## 3.      ANALYSIS

### 3.1      Fifth and Sixth Amendments

Defendant first argues that the Superseding Indictment—specifically with respect to Counts One through Three charging violations of §§ 922(a)(6) and 924(a)(2)—violates his Fifth and Sixth Amendment rights and fails to sufficiently state an offense. ECF No. 16 at 2. He argues that the Superseding Indictment fails to set forth all the elements of the offenses charged under §§ 922(a)(6) and 924(a)(2), specifically by omitting the "essential[] element . . . that [Defendant] knew not just that his statement

---

[1] The Court denied Defendant's motion for an extension of time to file a reply in support of his objections after concluding that the motion was not supported by good cause. ECF No. 25; Oct. 1, 2024 text order.

was false, but that it was likely to deceive the dealer, and that it was material to the sale." *Id.* at 3. The Superseding Indictment states that Defendant

> in connection with the acquisition of firearms from a federal licensee . . . knowingly made a false and fictitious written statement intended and likely to deceive the licensee as to a fact material to the lawfulness of the sale . . . . [I]n connection with the purchase and attempted purchase of . . . firearms . . . [Defendant] falsely stated on the [ATF Form] that he was not an unlawful user of a controlled substance, when in fact, he was an unlawful user of marijuana, a controlled substance.

ECF No. 2 at 1. Meanwhile, § 922(a)(6) provides, as relevant, that it is illegal

> for any person in connection with the acquisition . . . of any firearm . . . from a licensed . . . dealer . . . knowingly to make any false or fictious oral or written statement . . . intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale.

As the Government notes, the Court "previously rejected substantively identical claims" in *United States v. Washington*, No. 23-cr-35-1, ECF No. 49 (Feb. 22, 2024). ECF No. 18 at 7 (citing *United States v. Washington*, No. 23-CR-25-1-JPS, 2024 U.S. Dist. LEXIS 30216 (E.D. Wis. Feb. 22, 2024)). In *Washington*, the defendant made the identical argument, relying on identical authority, that is made here: that the indictment against her (specifically with respect to the counts charging violations of § 922(a)(6)) was deficient because it "omit[ted] any allegation that [the defendant] knew not just that her statement [that she was not an unlawful user of a controlled substance] was false, but that also it was material to the sale" and that it "was likely to deceive the firearm dealer." *Washington*, 2024 U.S. Dist. LEXIS 30216, at *4. The Court rejected that argument and denied the motion to dismiss. *Id.* at *34.

Defendant, on reply, acknowledges the Court's previous rejection in *Washington* of the argument he now makes.[2] ECF No. 20 at 1. But he asks the Court to "reconsider its previous findings in" *Washington. Id.* at 1, 7. Magistrate Judge Joseph declined to do so, and so will this Court. ECF No. 21 at 7. The Court agrees with the Government that there "is no reason to reach a different result here." ECF No. 18 at 7.

The Court thoroughly analyzed this issue in *Washington* in an identical context. It began by acknowledging that an indictment must "state[] all the elements of the crime charged," 2024 U.S. Dist. LEXIS 30216, at *7 (quoting *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013)), but that indictments are not "reviewed . . . 'in a hypertechnical manner.'" *Id.* (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). The Court noted that it is "generally acceptable for the indictment to 'track' the words of the statute itself, so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.'" *Id.* at *8 (quoting *Smith*, 230 F.3d at 305).

"The question may therefore be understood," the Court wrote, "as whether Defendant's knowing that the false statement she made had a 'natural tendency to influence, or be capable of influencing, the decision of the decisionmak[er] to which it was addressed,' . . . is itself an element of the offense such that it must be set forth in the Indictment." *Id.* at *9 (quoting *United States v. Holden*, 70 F.4th 1015, 1017 (7th Cir. 2023)). The Court concluded that it is not. *Id.*

---

[2]Defendant describes his argument with respect to the sufficiency of the Superseding Indictment as "similar" to that raised in *Washington*. ECF No. 20 at 7. His argument is, for all intents and purposes, identical. *See* ECF No. 21 at 7 ("[I]n . . . *Washington*, . . . I was presented with a nearly identical Fifth and Sixth Amendment challenge . . . .").

The Court will refrain from re-stating all that which it discussed in *Washington*. The Court will focus instead on the specific portions of that decision that Defendant now asserts were in error, none of which assertions are supported with any new case law or other intervening authority. *See* ECF No. 24 at 8.

Defendant begins by arguing that while the Court correctly "referenced the presumption of scienter in *Washington*," it "did not begin its analysis with presuming § 922(a)(6)'s scienter applies to its material elements." ECF No. 20 at 7. To the contrary, the Court began with the understanding that courts "normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." *Washington*, 2024 U.S. Dist. LEXIS 30216, at *9 (quoting *Rehaif v. United States*, 588 U.S. 225, 230 (2019)).

The Court went on to conclude, however, that this was not a case in which that presumption applied. "Notably," the Court wrote, "the Supreme Court wrote that *Rehaif* was 'not a case where the modifier 'knowingly' introduces a long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends.'" *Id.* at *13 (quoting *Rehaif*, 588 U.S. at 230). Unlike in *Rehaif*, the Court continued, "Section 922(a)(6) does not merely stop after a verb and an object. . . . [I]t contains an additional dependent clause and so implicates 'questions . . . about how far into the statute the modifier extends,' which questions were not at issue in *Rehaif*." *Id.* (quoting *Rehaif*, 588 U.S. at 230 and citing *United States v. Price*, 980 F.3d 1211 (9th Cir. 2020)). Defendant at multiple points in his objections concedes that this case implicates that question, which puts it outside of *Rehaif*'s explicit scope. *See* ECF No. 23 at 9 ("[T]he 'knowingly' in § 922(a)(6) precedes all the statute's elements, begging the question how

far into the statute that scienter applies."); *id.* at 12 (characterizing "the actual question" as "how far into the statute's text does the 'knowingly['] scienter reach and to which elements does it apply").

Defendant also argues that the Court's reading of *Flores-Figueroa v. United States,* 556 U.S. 646 (2009) was too narrow. ECF No. 20 at 8. In *Washington,* the Court concluded that the defendant's attempt to "extend the scienter element in this situation goes beyond that sanctioned by the Supreme Court in *Flores-Figueroa.*" 2024 U.S. Dist. LEXIS 30216, at *10. The Court stands by that conclusion.

In *Flores-Figueroa*, the Supreme Court considered whether the scienter "knowingly" in "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" extended to "of another person"—i.e., "whether the statute requires the Government to show that the defendant knew that the 'means of identification' . . . in fact, belonged to 'another person.'" 556 U.S. at 647. The Supreme Court concluded that it did and that the Government was so required.

The Court maintains that *Flores-Figueroa* does not clearly compel the result that the defendant in *Washington* sought and the result that Defendant now seeks. The Supreme Court there directed that "where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." 556 U.S. at 650. Thus, "[i]f we say that someone knowingly ate a sandwich with cheese, we normally assume that the person knew both that he was eating a sandwich and that it contained cheese." *Id.* at 651. "That which was mandated by the [Supreme] Court in *Flores-Figueroa* is already understood to be true here—that the defendant must

know that the statement [the object] she makes [the transitive verb] is false or fictitious . . . ." *Washington*, 2024 U.S. Dist. LEXIS 30216, at *11. But "*Flores-Figueroa* does not provide that 'knowingly' must necessarily extend even further," *id.*, and it certainly does not provide that "knowingly" must continue on to the second half of the statutory text which already expressly includes its own scienter—"intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale." § 922(a)(6).

It is also important to read and interpret *Flores-Figueroa* in light of subsequent authority, including *Rehaif. Rehaif* emphasized that the purpose of the presumption of scienter is to avoid catching "otherwise innocent conduct" within a statute's scope. 558 U.S. at 229 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) and citing *Morissette v. United States*, 342 U.S. 246, 256–58 (1952)). For example, "jurisdictional elements" are excluded from the application of the presumption of scienter because they "normally have nothing to do with the wrongfulness of the defendant's conduct." *Id.* at 230 (citing *Luna Torres v. Lynch*, 578 U.S. 452 (2016)). Thus, according to *Rehaif*, the defendant must know of his prohibited status because that status "is the 'crucial element' separating innocent from wrongful conduct." *Washington*, 2024 U.S. Dist. LEXIS 30216, at *14 (quoting 588 U.S. at 233); *Rehaif*, 588 U.S. at 235 ("A defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require.").

As the Court concluded in *Washington*, however, the same is not true here; irrespective of whether the defendant knows or has reason to suspect that his false statement will be of importance to the firearms dealer, "the defendant is still charged with having knowingly made a statement, which

[]he knows to be false or fictitious, intended or likely to deceive a firearms dealer in a transaction for acquisition of a firearm." 2024 U.S. Dist. LEXIS 30216, at *15. The individual is, in simpler terms, charged with knowingly lying on a federal form to get a gun. It cannot be said that an individual charged with engaging in such conduct lacks "the guilty state of mind that the statute's language and purposes require" or is engaging in "otherwise innocent conduct." *Id.* (quoting *Rehaif*, 588 U.S. at 235 and citing *Carter v. United States*, 530 U.S. 255, 269 (2000)); *Rehaif*, 588 U.S. at 234–35.

Defendant's argument to the contrary is essentially that "*some* lying on [the] ATF Form [] is permissible, so long as the individual thinks the lie does not matter." ECF No. 21 at 12. But as Magistrate Judge Joseph notes, such a position is at odds with the Seventh Circuit's assertion in *United States v. Holden* that "[t]he word 'material' in § 922(a)(6) does not create a privilege to lie" and that "the very act of lying to obtain a firearm implies a risk that the weapon will be misused." *Id.* at 12–13 (citing 70 F.4th 1015, 1016 (7th Cir. 2023)); *Holden*, 70 F.4th at 1018. "In other words, in the view of *Holden*, knowingly lying on [an ATF Form] is not per se innocent conduct. It is in itself the wrongful conduct to be weeded out." ECF No. 21 at 13. That being the case, the reasoning behind the presumption in favor of scienter— "to separate wrongful conduct from 'otherwise innocent conduct'"—does not apply here. *Carter*, 530 U.S. at 269 (quoting *X-Citement Video*, 513 U.S. at 72).

The Court's conclusion that the presumption in favor of scienter did not apply as the defendant in *Washington* argued that it did—and as Defendant now argues that it does—was further supported by additional authority and context. For example, the Seventh Circuit pattern jury instructions, as well as those of various other circuits, demonstrate the

understanding that the Government need not prove, and the factfinder need not find, that the defendant knew that his false statement was material to the lawfulness of the sale. *Washington*, 2024 U.S. Dist. LEXIS 30216, at *19–20 (quoting Seventh Circuit Pattern Criminal Jury Instruction, Statutory Instructions, 18 U.S.C. § 922(a)(6) and citing Fifth Circuit Pattern Criminal Jury Instruction 2.43(B) (2019); Eleventh Circuit Pattern Criminal Jury Instruction 034.3 (2022); and Ninth Circuit Model Criminal Jury Instruction 14.8 (2020)). Both Seventh Circuit and out-of-circuit caselaw similarly supported this reading of § 922(a)(6). *Id.* at *17 (citing *United States v. Bowling*, 770 F.3d 1168, 1174 (7th Cir. 2014); *United States v. Kaspereit*, 994 F.3d 1202, 1207 (10th Cir. 2021); and *United States v. Diaz*, 989 F.3d 390, 393 (5th Cir. 2021)). This additional context further bolstered the Court's conclusion that "[w]hether the defendant h[im]self subjectively knew that the false statement [that h]e conveyed was material is not acknowledged as a requirement of that offense" and therefore need not be explicitly set forth in an indictment charging the same. *Id.*

Defendant takes issue with the Court's and Magistrate Judge's Joseph's reliance on the jury instructions in determining the correct elements of § 922(a)(6). ECF No. 23 at 8–9 ("While [the jury instructions] are a helpful tool, they are not binding and cannot substitute textual and statutory analysis." (citing *United States v. Freeman*, 70 F.4th 1265, 1280 (10th Cir. 2023))). But both the Court and Magistrate Judge Joseph relied on them among other authorities and means of analysis; their consideration represented a mere part of a holistic analysis.

For all these reasons, the Court declines Defendant's invitation to reconsider its decision in *Washington* with respect to the sufficiency of an indictment charging violations of § 922(g)(a)(6). The charging document

here is essentially identical to that deemed constitutionally sufficient in *Washington*. *Compare* ECF No. 2 at 1 *with* Case No. 23-CR-35-1, ECF No. 1 at 1. Defendant's objections are therefore overruled and his motion to dismiss denied to the extent that they relate to the sufficiency of the Superseding Indictment with respect to Counts One through Three.

### 3.2    Second Amendment

Defendant next argues that all four Counts against him violate the Second Amendment under the framework of *New York State Rifle & Pistol Association, Incorporated v. Bruen*, 597 U.S. 1 (2022). ECF No. 16 at 2. The Court addresses this argument separately with respect to each statute at issue.[3]

### 3.2.1   Section 922(a)(6)

Defendant first argues that § 922(a)(6) is unconstitutional under the *Bruen* framework because the statute "itself burdens his Second Amendment rights directly." ECF No. 16 at 8–9. "If § 922(a)(6) allows the government to criminally prosecute any false statements when purchasing a firearm, then the statute is itself a direct infringement on core Second Amendment rights," he reasons. *Id.* at 9; *id.* ("Because § 922(a)(6) burdens the Second Amendment right to bear arms through the concomitant right to purchase them, it is subject to direct *Bruen* scrutiny."). He cites no legal

---

[3]Both the Government and Magistrate Judge Joseph interpreted Defendant's motion as raising both facial and as-applied constitutional challenges to § 922(a)(6) and § 922(g)(3), despite Defendant not having used the words "facial" or "as-applied" in his motion. ECF No. 21 at 17; *see also* ECF No. 24 at 11; ECF No. 20 at 18 (Defendant's reply clarifying that he makes both facial and as-applied challenges). The Court need not conduct its analysis as to § 922(a)(6) in separate facial vs. as-applied sections because, as discussed *infra* Section 3.2.1, the Second Amendment challenge as to § 922(a)(6) is in any event legally foreclosed.

Case 2:24-cr-00015-JPS    Filed 10/07/24    Page 10 of 22    Document 26

authority in support of this argument. In any event, his argument is legally foreclosed by *United States v. Scheidt*, 103 F.4th 1281 (7th Cir. 2024).

As Magistrate Judge Joseph notes, just "[t]wo days after [Defendant] filed his initial brief, the Seventh Circuit decided *United States v. Scheidt . . . .*" ECF No. 21 at 5. The defendant in *Scheidt* had moved to dismiss the § 922(a)(6) counts against her, contending that the statute criminalized conduct protected by the Second Amendment. 103 F.4th at 1283. The district court denied the motion, and the Seventh Circuit affirmed.

"We . . . do not see this as a Second Amendment case," the Seventh Circuit wrote. *Id.* at 1284. "Ordinary information-providing requirements, like those imposed by [the] ATF Form . . . and enforced through criminal statutes like § 922(a)(6), do not 'infringe' the right to keep and bear arms." *Id.* "Completing [the] ATF Form . . . , and adhering to its attendant truth-telling requirement, is conduct that is outside the scope of the Second Amendment's protections, not requiring application of *Bruen*'s historical analysis framework." *Id.* (citing *Huddleston v. United States*, 415 U.S. 814, 825 (1974)). "Scheidt faced a federal prosecution for providing false information to the government, full stop," and "[t]he plain text of the Second Amendment does not cover Scheidt's conduct . . . ." *Id.* Nor did the Seventh Circuit agree with the defendant that the ATF Form is "akin to a condition precedent that imposes an unconstitutional condition under the Second Amendment." *Id.*

Defendant contends that the Seventh Circuit in *Scheidt* "gave too short shift to the ways in which [§ 922(a)(6)] directly burdens the Second Amendment possession right." ECF No. 20 at 19. But as Magistrate Judge Joseph noted in her report and recommendation, ECF No. 21 at 5, and as Defendant concedes, ECF No. 23 at 15, both Magistrate Judge Joseph and

this Court are bound by *Scheidt*. Defendant argues that § 922(a)(6) directly burdens conduct protected by the Second Amendment, but the Seventh Circuit in *Scheidt* concluded unequivocally that it does not. He also argues that § 922(a)(6) "effectively creat[es] a condition precedent that imposes an unconstitutional barrier to gun possession," ECF No. 20 at 18, but the Seventh Circuit in *Scheidt*, again, concluded unequivocally that it does not. Defendant's argument with respect to the constitutionality of § 922(a)(6) is therefore rejected and his motion to dismiss denied to the extent that it was grounded in such argument.

### 3.2.2 Section 922(g)(3)

#### 3.2.2.1 Facial Challenge

Defendant additionally argues that § 922(g)(3) is facially unconstitutional under *Bruen* because the Second Amendment's plain text covers the conduct that the statute burdens and because the statute lacks sufficiently similar historical analogues. ECF No. 16 at 9–11. The Government contends in opposition that "[t]he plain text of [the] Second Amendment does not cover violations of . . . [§] 922(g)(3), and even if it did," the statute is nevertheless "consistent with the Nation's historical tradition of firearm regulation." ECF No. 18 at 8–9, 10–16.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Supreme Court's decision in *Bruen* sets forth the framework for analyzing a Second Amendment challenge.

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the

Case 2:24-cr-00015-JPS    Filed 10/07/24    Page 12 of 22    Document 26

> Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n. 10 (1961)). This "approach anchors itself exclusively in the Second Amendment's text and the pertinent history of firearms regulation, with the government bearing the burden of 'affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Atkinson v. Garland*, 70 F.4th 1018, 1019 (7th Cir. 2023) (quoting *Bruen*, 597 U.S. at 19).

Courts must first determine "whether the plain text of the Second Amendment protects" the conduct that the challenged statute prohibits. *Bruen*, 597 U.S. at 32. In her report and recommendation, Magistrate Judge Joseph answered that inquiry in the affirmative. ECF No. 21 at 15–17 ("I disagree that [Defendant] is no longer one of 'the people' under the Second Amendment due to his use of marijuana. As § 922(g)(3) regulates Second Amendment conduct, I find that the Second Amendment's plain text covers [Defendant's] conduct of possessing firearms and thus the Constitution presumptively protects the conduct.").[4]

Magistrate Judge Joseph accordingly turned to *Bruen*'s second step. *Id.* at 17. The second step directs courts to "consider[] whether the challenged regulation is consistent with the principles that underpin our regulatory tradition" and "whether the . . . law is 'relevantly similar' to laws that our tradition is understood to permit." *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (citing *Bruen*, 597 U.S. at 26–31 & n.7). The burden of

---

[4]Defendant obviously does not challenge that conclusion, *see* ECF No. 23 at 15, so the Court addresses it no further and assumes without deciding for purposes of this Order that it is correct.

demonstrating such "relevant[] similar[ity]" is on the Government. *Id.* at 1897 (quoting *Bruen*, 597 U.S. at 24).

"Why and how the regulation burdens the right are central to this inquiry." *Id.* at 1898 (citing *Bruen*, 597 U.S. at 29). "For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* "The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or 'historical twin.'" *Id.* (quoting *Bruen*, 597 U.S. at 30).

Magistrate Judge Joseph concluded that the Government met its burden in demonstrating that § 922(g)(3) is consistent with the nation's history and tradition of gun regulation. ECF No. 21 at 21. "While the [G]overnment acknowledges that specific prohibitions on the possession of firearms by drug users did not exist at the time the Second Amendment was enacted," Magistrate Judge Joseph wrote, "it argues that two analogues support the constitutionality of § 922(g)(3): (1) the historical tradition of disarming intoxicated individuals and (2) the historical tradition of disarming the mentally ill." *Id.* at 17–18; *see also* ECF No. 18 at 11–16. Magistrate Judge Joseph agreed.

"Since *Rahimi* was decided," she wrote, "two district courts have found § 922(g)(3) constitutional on its face analogizing its restrictions to the historical tradition of temporarily disarming intoxicated individuals." ECF No. 21 at 18 (citing *United States v. Youngblood*, No. 24-22-M-DWM, 2024 U.S. Dist. LEXIS 126170 (D. Mont. July 17, 2024) and *United States v. Vangdy*, No. 23-10027-JWB, 2024 U.S. Dist. LEXIS 122881 (D. Kan July 12, 2024)). These cases, at bottom, concluded that historical laws disarming intoxicated

persons "were sufficiently analogous to § 922(g)(3)'s proscription of firearm possession by current drug users to satisfy constitutional scrutiny." *Id.* at 20 (citing *Vangdy*, 2024 U.S. Dist. LEXIS 122881, at *2–4). As the courts in *Youngblood* and *Vangdy* did, Magistrate Judge Joseph found § 922(g)(3) "sufficiently similar to the intoxication laws to pass *Bruen* scrutiny." *Id.*

Magistrate Judge Joseph also agreed with the Government that the "tradition of disarming the mentally ill" is sufficiently analogous to § 922(g)(3)'s proscription to survive *Bruen* scrutiny. *Id.* Magistrate Judge Joseph noted that the Supreme Court in *Rahimi* reiterated the notion that the prohibition on possession of firearms by "the mentally ill" is "presumptively lawful." *Id.* at 21 (quoting *Rahimi*, 144 S. Ct. at 1902 and citing *Vangdy*, 2024 U.S. Dist. LEXIS 122881, at *2–4).

And as the Government did, Magistrate Judge Joseph relied heavily, but not exclusively, on *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010):

> Extending the ban to those who regularly abuse drugs makes particular sense because the Court has noted the similarity between [those who regularly abuse drugs and those who are mentally ill]. A few years before Congress barred the mentally ill and habitual drug abusers from possessing guns, the Court noted that drug addiction is an illness not unlike other mental illnesses, and that it could in some cases be contracted innocently or inadvertently. *See Robinson v. California*, 370 U.S. 660, 667 (1962); *see also Linder v. United States*, 268 U.S. 5, 18 . . . (1925). . . . [E]ven while recognizing that addiction is an illness, the Court nevertheless recognized that an addict's *behavior* can be regulated. Just a few months before Congress excluded both the mentally ill and drug users from firearm possession, the Court clarified that the Constitution did not forbid criminalizing the public acts of a habitual user. Rather than criminalizing status, the Court said, the state "has imposed upon appellant a criminal sanction for public behavior which may create substantial health and safety hazards, both for appellant and for members of the general

public." *Powell v. Texas*, 392 U.S. 514, 532 . . . (1968); *see also United States v. Jester*, 139 F.3d 1168, 1170 (7th Cir. 1998) . . . . So, too, with keeping firearms out of the hands of an habitual drug abuser, who has "lost the power of self-control with reference to the use of controlled substance," 27 C.F.R. § 478.11, and whose possession of a firearm likewise poses substantial health and safety hazards. As the House manager stated during debate on the legislation, "No one can dispute the need to prevent drug addicts, mental incompetents, persons with a history of mental disturbances, and persons convicted of certain offenses, from buying, owning, or possessing firearms." 114 Cong. Rec. 21784 (1968).

ECF No. 21 at 20–21 (quoting *Yancey*, 621 F.3d at 685–86).

In objection, Defendant first asserts that Magistrate Judge Joseph did not "hold the government to its burden" under *Bruen*'s second step, "opting instead to supplement the [G]overnment's lacking historical argument with [her] own citation to historical laws that the [G]overnment never raised." ECF No. 23 at 15. "[I]t is not up to the [C]ourt, nor the defendant," Defendant argues, "to engage in an independent 'searching historical survey' to fill the gaps in the [G]overnment's analysis." *Id.* (citing *Bruen*, 597 U.S. at 1 n.6).

In response to this objection, the Government points out that the same historical argument it presented here, which Defendant deems "lacking," was deemed sufficient to meet the Government's burden by Judge Brett H. Ludwig in *United States v. McDaniel*, No. 22-CR-0176-BHL-1, 2024 U.S. Dist. LEXIS 93161 (E.D. Wis. May 24, 2024), which case upheld the constitutionality of § 922(g)(3). ECF No. 24 at 12–13.

The Court will overrule Defendant's objection. Judge Ludwig in *McDaniel* concluded, based on what the Government represents were "the same historical arguments" that it presented here, ECF No. 24 at 12–13, that

"the prohibition on illegal drug users from possessing weapons is consistent with the long-held understanding of the scope of the right to bear arms." 2024 U.S. Dist. LEXIS 93161, at *15. The Court sees no reason to depart from Judge Ludwig's opinion that the Government's showing at *Bruen*'s second step was sufficient. Nor will the Court fault Magistrate Judge Joseph for solidifying her report and recommendation with authority beyond that presented by the Government. *See* ECF No. 23 at 15 (objecting as to Magistrate Judge Joseph's having "supplemented the [G]overnment's lacking historical argument with [her] own citation to historical laws that the [G]overnment never raised"). For Magistrate Judge Joseph to have cited to additional authority is not to say that the Government didn't cite enough.

Defendant also objects that the "[f]ounding-era intoxication and mental health laws" cited in Magistrate Judge Joseph's report and recommendation "do not satisfy *Bruen*'s historical test." ECF No. 23 at 18. Said otherwise, he contends that the analogues proffered by the Government are not "relevantly similar" to § 922(g)(3). *Rahimi*, 144 S. Ct. at 1898 (citing *Bruen*, 597 U.S. at 29).

The Court will similarly overrule this objection. In *McDaniel*, Judge Ludwig concluded that "Section 922(g)(3) is relevantly similar to historical firearm regulations concerning . . . the mentally ill" and further that "[that] conclusion is consistent with nearly every court that has considered this issue post-*Bruen*." 2024 U.S. Dist. LEXIS 93161, at *18–19 (collecting cases); *see also United States v. Veasley*, 98 F.4th 906, 912–16, 918 (8th Cir. 2024) (concluding that historical firearms regulation with respect to the mentally ill is a sufficiently similar historical analogue to § 922(g)(3) and accordingly rejecting a facial Second Amendment challenge to § 922(g)(3)); *United States v. Costianes*, 673 F. Supp. 3d 756, 762 (D. Md. 2023) ("The Government has

shown that § 922(g)(3) is 'relevantly similar' to historical regulations aimed at preventing potentially dangerous persons from possessing and using firearms, such as . . . individuals suffering from mental illness . . . .").

The same is true with respect to the analogue of the intoxication laws. *United States v. Posey*, 655 F. Supp. 3d 762, 772–73 (N.D. Ind. 2023) (concluding that the state's historical practice of "restricting the right of habitual drug users or alcoholics to possess or carry firearms" is "sufficiently analogous to uphold § 922(g)(3)"); *Youngblood*, 2024 U.S. Dist. LEXIS 126170, at *10–15 (concluding that intoxication laws are "relevantly similar" to § 922(g)(3) (quoting *Rahimi*, 144 s. Ct. at 1923)). Defendant points to no case having concluded otherwise.[5] Nor has the Court independently located any such case. Defendant's objection is accordingly overruled.

### 3.2.2.2    As-Applied Challenge

In addition to his facial challenge, discussed *supra* Section 3.2.2.1, Defendant challenges § 922(g)(3) as applied to him. ECF No. 21 at 17, 21–24; *see also supra* note 3. "An as-applied challenge is one that charges an act is unconstitutional as applied to a plaintiff's specific activities even though it may be capable of valid application to others." *Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011) (citing *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 903 & n.22 (1984)). The defendant must demonstrate that the statute is unconstitutional specifically in "the way it was applied to the particular facts of [his] case." *United States v. Rice*, 662 F. Supp. 3d 935,

---

[5]His citation to *United States v. Connelly*, No. 23-50312, 2024 U.S. App. LEXIS 21866 (5th Cir. Aug. 28, 2024) does not help him here because that court, too, rejected the defendant's facial Second Amendment challenge to § 922(g)(3). ECF No. 23 at 18–19.

937 (N.D. Ind. 2023) (citing *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011)).

Underlying Defendant's § 922(g)(3) charge is the Government's contention that Defendant possessed a firearm while knowing that he was an unlawful user of a controlled substance—specifically, marijuana. ECF No. 16 at 1. Defendant argues that § 922(g)(3) violates the Second Amendment as applied to him because he, as a marijuana user, is no "more likely to be violent with a firearm than an ordinary, law-abiding person." ECF No. 20 at 17. He points to a Department of Justice Notice of Proposed Rulemaking, which reflects a proposal to move marijuana from Schedule I to Schedule III, and which notes that "the vast majority of individuals who use marijuana are doing so in a manner that does not lead to dangerous outcomes to themselves or others." *Id.* (citing DEP'T OF JUST., Notice of Proposed Rulemaking, *available at* https://www.dea.gov/sites/default/files/2024-05/Scheduling%20NPRM%20508.pdf (last visited Oct. 7, 2024).

In her report and recommendation, Magistrate Judge Joseph noted that "the viability of such as-applied challenges" to § 922(g)(3) is unclear. ECF No. 21 at 22. She cited to *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), *United States v. Torres-Rosario*, 658 F.3d 110 (1st Cir. 2011), and *United States v. Gay*, 98 F.4th 843 (7th Cir. 2023) for the proposition that the "courts of appeals are split as to whether as-applied Second Amendment challenges to § 922(g)(1) are viable." *Id.* Notwithstanding the lack of clarity, she conceded that the Seventh Circuit has acknowledged that there is "*some* room for as-applied challenges to the statute." *Id.* at 23 (quoting *Gay*, 98 F.4th at 846). That being the case, she turned to the merits of Defendant's as-applied Second Amendment challenge. *Id.*

Magistrate Judge Joseph understood Defendant's argument as contending that "because marijuana users tend not to be dangerous, whether § 922(g)(3) is constitutional as-applied turns on whether one is actually dangerous while using the controlled substance," which "distinction seems to turn on the habitual nature of the drug use." *Id.* (citing *Yancey*, 621 F.3d at 685 ("[H]abitual drug users, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms.")). But, Magistrate Judge Joseph pointed out, Defendant did not argue that he was not a habitual user of marijuana. *Id.* And notably, while Defendant points to research suggesting that "the vast majority of individuals who use marijuana are doing so in a manner that does not lead to dangerous outcomes to themselves or others," ECF No. 20 at 17 (citing DEP'T OF JUST., Notice of Proposed Rulemaking, *available at* https://www.dea.gov/sites/default/files/2024-05/Scheduling%20NPRM%20508.pdf (last visited Oct. 7, 2024), he never actually argues that he personally fits within that majority.

In fact, facts asserted by the Government suggest the opposite; the Government contends that in one interaction with police in July 2023, Defendant was actively rolling a blunt and had in his pockets a baggie of marijuana, thousands of dollars in cash, and ammunition when he conceded to police that a parked vehicle they were inspecting—and the baggies of marijuana, firearm, loaded magazine, and additional ammunition inside it—were his. ECF No. 18 at 2–3. Defendant also allegedly conceded to the officers that he smoked marijuana one to two times a day. *Id.* at 3; *id.* at 4 (alleging that Defendant told an officer on a different occasion that he "smokes marijuana all day long"). The officers on that occasion in July 2023 had responded to a Shotspotter call in the area,

and an anonymous citizen informed them that Defendant was involved in the shooting. *Id.* at 2–3. "For these reasons," Magistrate Judge Joseph concluded, "[Defendant's] as-applied challenge also fails." ECF No. 21 at 24.[6]

In his objections, Defendant avers as a general matter that "Section 922(g)(3) is unconstitutional under *Bruen* and *Rahimi*," but he does not appear to object specifically with respect to Magistrate Judge Joseph's analysis regarding habitual marijuana use and actual dangerousness. ECF No. 23 at 16.[7] The Court accordingly declines to disturb Magistrate Judge Joseph's conclusions on those fronts. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009) ("If no party objects to the magistrate judge's action, the district judge may simply accept it.").

4.    **CONCLUSION**

For the reasons discussed herein, Defendant's objections, ECF No. 23, to Magistrate Judge Joseph's report and recommendation, ECF No. 21, are overruled. Defendant has not demonstrated that Magistrate Judge Joseph erred in any respect in recommending that Defendant's motion to

---

[6]Magistrate Judge Joseph stressed in her report and recommendation that these facts are merely alleged and have not been proven. ECF No. 21 at 23 n.3. This, in and of itself, "may be grounds to deny [Defendant's] [as-applied] challenge." *Id.*; *see, e.g.*, *United States v. Christianson*, No. 2:19CR140-PPS, 2021 U.S. Dist. LEXIS 84685, at *3 (N.D. Ind. May 3, 2021) ("Because as-applied challenges require review of the specific facts of a case, which cannot yet be determined prior to the parties' presentation of evidence at trial, a court cannot review and determine an as-applied argument presented in a pretrial motion." (citing *United States v. Bonin*, No. 15 CR 22, 2016 U.S. Dist. LEXIS 26247 (N.D. Ill. Mar. 1, 2016))).

[7]Nor, in his reply, did Defendant challenge or dispute the Government's factual assertions with respect to Defendant's own marijuana use and his alleged involvement in various shootings. ECF No. 20 at 17 (asserting that marijuana users as a class are no more likely to be violent with a firearm than non-marijuana users, but not asserting that the same is true for himself personally).

dismiss be denied. Nor has Defendant demonstrated that the Court's decision in *Washington* was in error. The Court accordingly adopts Magistrate Judge Joseph's report and recommendation in full and denies Defendant's motion to dismiss the indictment.

Accordingly,

**IT IS ORDERED** that Defendant Dameon A. Holcomb's objections, ECF No. 23, to Magistrate Judge Joseph's report and recommendation, ECF No. 21, be and the same are hereby **OVERRULED**;

**IT IS FURTHER ORDERED** that Magistrate Judge Joseph's report and recommendation, ECF No. 21, be and the same is hereby **ADOPTED**; and

**IT IS FURTHER ORDERED** that Defendant Dameon A. Holcomb's motion to dismiss, ECF No. 16, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 7th day of October, 2024.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge